[Cite as *Gorman v. Gorman*, 2013-Ohio-5643.]

STATE OF OHIO, JEFFERSON COUNTY

IN THE COURT OF APPEALS

SEVENTH DISTRICT

THEODORE GORMAN,                    )
                                    )
    PLAINTIFF-APPELLEE,             )
                                    )          CASE NO. 12 JE 23
V.                                  )
                                    )          OPINION
MICHELLE L. GORMAN,                 )
                                    )
    DEFENDANT-APPELLANT.            )

| | |
|---|---|
| CHARACTER OF PROCEEDINGS: | Civil Appeal from Court of Common Pleas, Domestic Relations Division of Jefferson County, Ohio Case No. 08DR82 |
| JUDGMENT: | Affirmed |
| APPEARANCES: | |
| For Plaintiff-Appellee | Attorney Jane Hanlin P.O. Box 1506 Steubenville, Ohio 43952 |
| For Defendant-Appellant | Attorney William R. Biviano Huntington Bank Tower, Suite 700 108 Main Avenue SW Warren, Ohio 44481-1010 |

JUDGES:

Hon. Gene Donofrio
Hon. Joseph J. Vukovich
Hon. Cheryl L. Waite

Dated: December 18, 2013

[Cite as *Gorman v. Gorman*, 2013-Ohio-5643.]

DONOFRIO, J.

{¶1} Defendant-appellant, Michelle Gorman, appeals from a Jefferson County Common Pleas Court judgment modifying child support and parenting time.

{¶2} Appellant and plaintiff-appellee, Theodore Gorman, were divorced on September 16, 2008. They share two children, Mikayla (d.o.b. 10/7/99) and Ryan (d.o.b. 9/4/02).

{¶3} The final decree of divorce incorporated an agreement regarding custody and visitation. Pursuant to the agreement, appellant was designated the residential parent and appellee was to have parenting time as set out in the agreement. The agreement stated that when one parent was unavailable for a given amount of time, they were to contact the other parent and offer the opportunity for child care and the parties were to contact appellant's parents or the children's babysitter when they were not available. It also set out a modified visitation schedule for appellee during football season, as he was coaching football. And it provided that the children would spend Christmas Eve and the night before Easter at appellant's house and would go with appellee at noon on Christmas Day and Easter Day. And on Memorial Day and Labor Day weekends, appellee would have the children from Friday until Saturday at 5:00 and appellant would have them the remainder of the holiday. Pursuant to the divorce decree, appellee was to pay appellant $1,150 per month in child support. Additionally, pursuant to the decree, each party was to claim one child for income tax purposes.

{¶4} On May 11, 2012, appellee filed a motion to modify parenting time and child support. He asserted that since the time of the divorce, he remarried, had another child, his income decreased, and appellant's income increased. He requested the court grant him more liberal holiday visitation and eliminate several of the restrictions on visitation. He requested that when the children were in his care and he was unavailable that he be permitted to leave them with his wife instead of contacting appellant, the children's grandparents, or the babysitter. He also stated that since he was no longer coaching high school football, the modified visitation during football season should not apply. And he requested that the children have

visitation with him on Christmas and Easter mornings on alternating years. As to child support, appellee requested a reduction to $794.76 per month. He asserted that his yearly income decreased from $76,766 to $72,987, while appellant's income increased from $85,281 to $93,457. Additionally, appellee stated he was entitled to an adjustment in support due to the birth of his son.

{¶5} Appellant filed a response urging the court to overrule appellee's motion, to interview the children in chambers, and to modify the dependency exemption granting her the right to claim both children for tax purposes.

{¶6} The trial court held a hearing on the pending matters where it heard testimony from the parties, appellee's wife, and the children's counselor. It did not interview the children. The trial court found that a modification of child support was warranted based on a change of circumstances. It ordered that appellee's new child support obligation would be $900 per month. It also granted appellant's request to claim both children for income tax purposes. The court noted that at the hearing the parties agreed to some of the proposed visitation modifications. The parties agreed to appellee's requests regarding the various restrictions on visitation and agreed that since appellee was no longer coaching football the modified visitation during football season need not apply. The only visitation issue left for the court to determine was whether to allow the changes appellee requested for holidays. The court granted these changes, which allow for the parties to alternate holiday visitations so that each party will have the children during the "prime holiday time" on alternating years for Easter, Memorial Day, Labor Day, Fourth of July, Thanksgiving, and Christmas.

{¶7} Appellant requested that the court enter findings of fact and conclusions of law on all issues. The trial courted denied appellant's request as to its decision not to interview the children in chambers. It noted that whether to conduct an in-chambers interview is in the court's discretion. The court then entered its findings of fact and conclusions of law as to child support and visitation.

{¶8} Appellant filed a timely notice of appeal on September 26, 2012.

{¶9} Appellant raises six assignments of error. Her first assignment states:

THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING THE VISITATION SCHEDULE BASED UPON NUMEROUS FINDINGS OF FACT THAT ARE AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND UNSUPPORTED BY THE EVIDENCE PRESENTED.

**{¶10}** Appellant argues that several of the trial court's findings of fact in support of modifying visitation were against the manifest weight of the evidence. Appellant further contends there was no evidence that the modification of the holiday visitation schedule was in the children's best interest. Instead, she claims the only evidence was that appellee's new baby deserved to celebrate holidays with his half-siblings. Thus, she asserts the modification was to protect the best interest of appellee's baby.

**{¶11}** We review a trial court's decision to modify visitation for abuse of discretion. *Braatz v. Braatz*, 85 Ohio St.3d 40, 44, 706 N.E.2d 1218 (1999). Abuse of discretion connotes more than an error of law or judgment; it implies the trial court's attitude was unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

**{¶12}** Judgments supported by some competent, credible evidence going to all the material elements of the case must not be reversed, as being against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.*, 54 Ohio St.2d 279, 376 N.E.2d 578, syllabus (1978). See, also, *Gerijo, Inc. v. Fairfield*, 70 Ohio St.3d 223, 226, 638 N.E.2d 533 (1994). Reviewing courts must oblige every reasonable presumption in favor of the lower court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226 (citing *Seasons Coal v. Cleveland*, 10 Ohio St.3d 77, 461 N.E.2d 1273 [1984]). In the event the evidence is susceptible to more than one interpretation, we must construe it consistently with the lower court's judgment. Id. In addition, the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts. *Kalain v. Smith*, 25 Ohio St.3d 157, 162, 495 N.E.2d 572 (1986). "A finding of an error of law is a legitimate ground for reversal,

but a difference of opinion on credibility of witnesses and evidence is not." *Seasons Coal,* 10 Ohio St.3d at 81.

**{¶13}** Modification of visitation rights is governed by R.C. 3109.051. *Braatz,* 85 Ohio St.3d at 44-45. A trial court must consider the fifteen factors listed in R.C. 3109.051(D) and has the discretion to then determine whether or not a change in visitation is in the best interest of the child. *Id.* at 45. The party moving to modify visitation need not show a change in circumstances. *Id.*

**{¶14}** The R.C. 3109.051(D) factors are:

(1) The prior interaction and interrelationships of the child with the child's parents, siblings, and other persons related by consanguinity or affinity * * *;

(2) The geographical location of the residence of each parent and the distance between those residences * * *;

(3) The child's and parents' available time, including, but not limited to, each parent's employment schedule, the child's school schedule, and the child's and the parents' holiday and vacation schedule;

(4) The age of the child;

(5) The child's adjustment to home, school, and community;

(6) If the court has interviewed the child in chambers, pursuant to division (C) of this section, regarding the wishes and concerns of the child as to parenting time by the parent who is not the residential parent * * * or as to other parenting time or visitation matters, the wishes and concerns of the child, as expressed to the court;

(7) The health and safety of the child;

(8) The amount of time that will be available for the child to spend with siblings;

(9) The mental and physical health of all parties;

(10) Each parent's willingness to reschedule missed parenting time and to facilitate the other parent's parenting time rights, and with respect to a person who requested companionship or visitation, the willingness of that person to reschedule missed visitation;

(11) In relation to parenting time, whether either parent previously has been [convicted of or pleaded guilty to any criminal offense involving an abused child or a neglected child or perpetrated abuse or neglect];

(12) [Deals only with non-parents] * * *;

(13) Whether the residential parent or one of the parents subject to a shared parenting decree has continuously and willfully denied the other parent's right to parenting time in accordance with an order of the court;

(14) Whether either parent has established a residence or is planning to establish a residence outside this state;

(15) [Deals only with non-parents] * * *;

(16) Any other factor in the best interest of the child.

{¶15} In this case, the trial court made the following findings going to each of the applicable factors. The children's interaction with appellee, their new sibling, their stepmother, their stepbrother, and numerous members of their stepmother's family provide a positive benefit for them and they enjoy those interrelationships. The parties live within minutes of each other and, therefore, travel distance has no effect on the parenting schedule. Since the divorce, appellee is no longer coaching football. Consequently, he has additional time to spend with the children. The children are considerably older than they were at the time of the divorce and both have the ability to communicate with their parents at any time. The children have fully adjusted to appellee's residence with his new wife and their stepbrother. The modification in parenting time will not result in any change to their school or community environments. It was unnecessary to interview the children regarding the

modifications the court found to be warranted. Neither child has any significant health issues. The modifications proposed by appellee will allow the children to spend additional time with their new sibling and to spend prime holiday time with both parents. Neither party has any mental or physical health conditions that affect parenting time. It is necessary to order a formal modification of the parenting time because the parties have been unable to negotiate the changes in the current court order. Neither parent has been convicted of any criminal offense that involved a child being abused or neglected. While appellant does not continuously and willfully deny parenting time, she fails to offer any additional time over what is provided in the court order. Neither party plans to establish a residence outside of Ohio. The stability of appellee's residence and the addition of a half-sibling can only be viewed as a positive environment for the children. The children deserve to know a full and loving environment with each of their parents. There is no reason for the children to spend all of the "prime" holiday time with just one parent and to do so would not be in the children's best interest.

**{¶16}** The testimony supports the trial court's findings.

**{¶17}** Appellee testified that at the time of the divorce he lived alone and did not have much of an extended family. (Tr. 11-12). Due to his situation at the time of the divorce, he agreed to let appellant have the children on Christmas and Easter mornings, Memorial Day, Labor Day, and during the prime time on Thanksgiving. (Tr. 14-16). Additionally, appellee admitted that initially visitation was difficult for the children. (Tr. 32). But now they are very comfortable in his house. (Tr. 33).

**{¶18}** Appellee testified that since the divorce, he has remarried and has a new baby. (Tr. 10-11). He now lives with his wife Lynette, their baby, and his step-son Brandon. (Tr. 12-13). Appellee submitted numerous photographs of the children with Brandon and the baby where they all appear to be happy and enjoying each other. (Pt. Ex. 1). He stated the children have grown close to Lynette and her extended family members. (Tr. 17). Appellee opined that the children have adjusted to life at his house with Lynette and the baby and are very comfortable there. (Tr. 32-

33).  He stated they talk to Lynette about school and invite friends over.  (Tr. 37-38).  And he stated that when the children arrive at his house they run straight for the baby.  (Tr. 34).  He testified they love the baby and coddle him.  (Tr. 33-34).  Appellee opined the visitation modifications were in the children's best interest.  (Tr. 46).  He further testified he wanted his children to spend some holiday time with their new brother.  (Tr. 72).  And he wanted his new son to experience waking up on Christmas morning with his siblings.  (Tr. 72).

{¶19}  Appellee's wife Lynette testified next.  Lynette described her time with the children as including watching movies, visiting with her family, and having the children's friends to their house.  (Tr. 115).  She stated the children get along well with her family and call her aunt and uncle "Aunt" and "Unc" and Mikayla named Lynette's mother "Nun" because she already had a "Nunny."  (Tr. 116).  Lynette went on to testify that the children love their baby brother and want to hold him as soon as they walk in the house. (Tr. 116).  She stated that Mikayla likes to carry him around the track meets and show him to her friends.  (Tr. 116-117).  Lynette opined it would be beneficial for the children to spend holidays with their baby brother and to watch him as he grows up.  (Tr. 118).  She also opined that the children were well adjusted to her and appellee's home.  (Tr. 123-124).

{¶20}  Karen Lombardi is the children's counselor.  As to their relationship with Lynette, Lombardi recalled Mikayla telling her that she appreciated Lynette's small acts of kindness.  (Tr. 138).  And as to the baby, she stated that the children speak very affectionately about their baby brother and love him.  (Tr. 139).  As to visitation, Lombardi opined that consistency in the visitation schedule was important and traditions should be kept intact.  (Tr. 140, 143).  She opined that expanding the visitation schedule was not in the children's best interest at this time.  (Tr. 156).  Lombardi, however, was unaware of what changes in visitation that appellee was requesting.  (Tr. 151).

{¶21}  Appellant was the final witness.  She testified that the children have been accustomed to certain holiday traditions since they were born.  (Tr. 161).  She

stated their holiday traditions center around her family and spending time with their cousins, aunts, and uncles. (Tr. 161-162). For instance, she explained that every Christmas the children go to church on Christmas Eve, eat the same dinner, and wake up on Christmas morning to 30 presents each. (Tr. 162). She also testified the children love to spend Memorial Day, Fourth of July, and Labor Day at the country club with her and their friends. (Tr. 177). Appellant opined it was not in the children's best interest to change their holiday traditions and schedules. (Tr. 185). She stated that if the children ever told her they wanted to spend more holiday time with their baby brother she would be okay with it. (Tr. 208). Otherwise, she would never agree that it would be in their best interest to share some of the holiday time with appellee. (Tr. 188).

{¶22} This evidence supports the trial court's findings of fact. Appellant specifically takes issue with four of the court's findings.

{¶23} The first finding she takes issue with is that the children have developed a positive and healthy relationship with their step-brother Brandon and numerous members of Lynette's family. The evidence on this point, however, supports the court's finding. Both appellee and Lynette testified the children have adjusted to life at their house, which includes their step-brother. Additionally, they both testified that the children now spend time with Lynette's family. In fact, the children refer to Lynette's aunt and uncle as "Aunt" and "Unc" and Mikayla took it upon herself to name Lynette's mother "Nun." Additionally, appellee submitted numerous photographs of the children spending time with Brandon and the baby and they appear to be comfortable and enjoying themselves.

{¶24} The second finding appellant takes issue with is that the children have fully adjusted to life at appellee's residence. But once again, the evidence supports this finding. Appellee testified that when the parties first divorced, visitation was difficult. But now the children are very comfortable at his house. He stated that they each have their own bedrooms at his house. And the first thing they want to do when

they get there is to see their baby brother. They also invite friends over when they are at appellee's house.

**{¶25}** The third finding appellant takes issue with is that appellee has a full and loving family environment that includes his wife, his infant son, his step-son, and numerous members of his wife's family, all of whom have developed a warm and loving relationship with the children. Both appellee and Lynette testified that the children have developed relationships with Brandon and Lynette's extended family. And the testimony was overwhelmingly positive regarding the children's relationship with their baby brother. Appellee and Lynette both testified that the first thing the children want to do when they arrive is to hold their brother. Even the children's counselor, who was appellant's witness, testified that the children love their brother dearly.

**{¶26}** The last finding appellant takes issue with is that she presented no evidence as to why appellee should not be able to develop important family traditions with the children at this time. Appellant spent some time testifying as to why she wished to continue the children's traditions with her family, as they are the only traditions the children have ever known. She also testified that she would only want to continue the traditions in her family. She stated she would never agree that it was in the children's best interest to share some of the holiday time with appellee.

**{¶27}** As can be seen in the above discussion, each of the findings appellant takes issue with is supported by the evidence. We cannot conclude the trial court abused its discretion in making these findings. Therefore, appellant's first assignment of error is without merit.

**{¶28}** Appellant's second assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN MODIFYING THE VISITATION SCHEDULE IN THE ABSENCE OF ANY EVIDENCE THAT SUCH A MODIFICATION WOULD BE IN THE CHILDREN'S BEST INTERESTS.

{¶29} Appellant argues there was no evidence that modifying the holiday visitation schedule was in the children's best interest.

{¶30} While there may not have been significant testimony specific to modifying the holiday visitation schedule, the evidence, taken as a whole, supports a finding that doing so is in the children's best interest.

{¶31} Appellee and Lynette offered abundant testimony that the children are happy and well-adjusted at their home. While at appellee's house the children watch movies, visit with Lynette's family, invite friends over, and spend time with their baby brother. Appellee testified that the only reason he agreed at the time of the divorce to allow the children to spend all "prime" holiday time with appellant was because he did not have any extended family and the children were used to spending the holidays with appellant's family. But in the years since the divorce, the children now have a baby brother, a step-mother, and a step-brother. Appellee and Lynette both opined it would be in the children's best interest to share holidays equally between their house and appellant's family. Appellant testified to the contrary. But which testimony to give more weight to was a matter for the trier of fact.

{¶32} In reviewing the court's judgment, we are to oblige every reasonable presumption in favor of the trial court's judgment and finding of facts. *Gerijo*, 70 Ohio St.3d at 226. In doing so here, we find that the trial court's judgment is supported by competent credible evidence. It is important to note too that the court's order simply splits the holiday time equally between the parties. Under the court's order, neither party spends more "prime holiday time" with the children than does the other. In a case such as this, where both parents are actively involved with the children, it is only fair that they equally share holiday time.

{¶33} Accordingly, appellant's second assignment of error is without merit.

{¶34} Appellant's third assignment of error states:

THE TRIAL COURT ERRED IN FAILING TO ALLOW THE LICENSED COUNSELOR [TO] PROVIDE EXPERT TESTIMONY ON

WHETHER THE MODIFICATION OF THE VISITATION SCHEDULE WAS IN THE BEST INTERESTS OF THE CHILDREN.

**{¶35}** In this assignment of error, appellant argues the trial court erred in preventing Karen Lombardi, the children's counselor, to give her opinion as to the children's best interests. She states that the court was not obligated to believe Lombardi's testimony on this issue but it was obligated to listen to it.

**{¶36}** A trial court has broad discretion in determining whether to admit or exclude evidence and its decision will not be reversed absent an abuse of discretion. *State v. Mauldin*, 7th Dist. No. 08-MA-92, 2010-Ohio-4192; *State v. Mays*, 108 Ohio App.3d 598, 617, 671 N.E.2d 553 (1996).

**{¶37}** During redirect examination, appellant's counsel asked Lombardi if it was in the children's best interest to modify the parenting schedule at this time. (Tr. 154). The court interrupted and asked Lombardi if she knew what the parenting schedule was. (Tr. 154). Lombardi stated the extent of what she knew about the visitation schedule was that the children saw appellee every Wednesday and every other weekend. (Tr. 154). A few questions later, counsel asked Lombardi if it was in the children's best interest to modify or lessen the time they spent with their grandparents on Christmas. (Tr. 155). Appellee objected and the court sustained the objection. (Tr. 155). Lombardi subsequently testified that she did not believe that expanding the children's visitation was in their best interest. (Tr. 156).

**{¶38}** The trial court did not abuse its discretion in sustaining appellee's objection.

**{¶39}** It is important to note that Lombardi was not sure what the issue was regarding visitation. She thought the change in visitation had to do with appellee having more parenting time in general. (Tr. 151). And when asked about modifying the parenting schedule, Lombardi referred to the every Wednesday and every other weekend schedule. (Tr. 154). It does not appear that Lombardi was aware that the only change at issue dealt with holidays.

{¶40} Moreover, the trial court heard Lombardi's opinion earlier in her testimony. Appellant's counsel specifically asked Lombardi, "would it be beneficial to these two children, Ryan and Mikayla, to change that [the current weekly visitation] at this time?" (Tr. 140). To which Lombardi replied, "Oh, no. I don't think it would be beneficial. I think that for children a consistency is the most important thing and routine and sticking with the schedule that is already known to the child." (Tr. 140). Appellant's counsel also asked Lombardi if traditions were important to children. (Tr. 143). Lombardi testified that the parties should try to keep traditions intact for the children. (Tr. 143). Thus, the trial court did hear Lombardi's opinion on these issues.

{¶41} For these reasons, we cannot conclude that the trial court abused its discretion in sustaining appellee's objection. Accordingly, appellant's third assignment of error is without merit.

{¶42} Appellant's fourth assignment of error states:

THE TRIAL COURT ABUSED ITS DISCRETION IN NOT INTERVIEWING THE CHILDREN AS TO THEIR DESIRES.

{¶43} Appellant asserts the trial court erred in choosing not to interview the children as she requested. She notes that at a June 4, 2012 hearing, the court stated it would interview the children if it was required to do so. And in its findings of fact and conclusions of law, the court found R.C. 3109.051(C) provided that the interview was discretionary. Because the court did not conduct an interview, appellant asserts it could not determine the existence of any factors listed in R.C. 3109.051(D).

{¶44} R.C. 3109.051(C) provides that in considering the R.C. 3109.051(D) factors when determining parenting time matters, "the court, in its discretion, may interview in chambers any or all involved children regarding their wishes and concerns." This is in contrast to R.C. 3109.04(B)(1), dealing with allocating parental rights and responsibilities, which provides that in determining the children's best interest, "the court, in its discretion, may and, upon the request of either party, shall

interview in chambers any or all of the involved children regarding their wishes and concerns with respect to the allocation."

**{¶45}** Thus, the legislature clearly granted the courts more discretion in determining whether to interview children in cases involving visitation than in cases involving the allocation of parental rights and responsibilities. In cases involving visitation, whether to interview the children is left solely to the court's discretion, whether or not a party requests such an interview. In cases involving the allocation of parental rights and responsibilities, however, the court must interview the children if either party makes such a request.

**{¶46}** In this case, the trial court found that it was unnecessary to interview the children regarding the modifications the court found to be warranted. The trial court did not abuse its discretion in making this decision. The only visitation issue that the court determined was whether to change the holiday visitation schedule. And the court's changes simply resulted in the children having equal holiday time with each parent. The court likely determined that there was not a significant enough change at issue to warrant putting the children through an interview with the court. There is nothing in the record to demonstrate the court abused its discretion in deciding not to interview the children.

**{¶47}** Accordingly, appellant's fourth assignment of error is without merit.

**{¶48}** Appellant's fifth assignment of error states:

THE TRIAL COURT ERRED IN NOT PROPERLY SETTING FORTH A DEVIATION FROM THE STANDARD CHILD SUPPORT GUIDELINES AND NOT ATTACHING A CHILD SUPPORT CALCULATION WORKSHEET TO THE ORIGINAL DIVORCE DECREE.

**{¶49}** Appellant asserts that instead of filling out a child support worksheet at the time of the divorce, the parties came to an agreed amount of support and then created a worksheet that would result in the desired child support obligation.

**{¶50}** Appellant claims the trial court erred by failing to attach a child support worksheet to the original divorce decree that calculated support and then set out a deviation from the standard support as required by R.C. 3119.22. She asserts this error was compounded when appellee sought to have his support obligation modified based on his current income being less than his income as set forth in the child support worksheet completed by the parties at the time of the divorce. Appellant contends that appellee's income has actually increased since 2008. But because his 2012 income is less than the income the parties assigned to him in 2008, the trial court reduced appellee's obligation.

**{¶51}** In reviewing matters concerning child support, appellate courts look at whether the trial court abused its discretion. *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).

**{¶52}** Generally, when computing an obligor's child support obligation, a child support computation worksheet must be completed and made a part of the trial court's record. *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496 (1992), at paragraph one of the syllabus. But in cases where the parties' combined income exceeds $150,000, the trial court need not rely on the child support worksheet. *Longo v. Longo*, 11th Dist. Nos. 2008-G-2874, 2009-G-2901, 2010-Ohio-3045, ¶39; *Zeitler v. Zeitler*, 9th Dist. No. 04CA008444, 2004-Ohio-5551, ¶8. In the present case, at the time of the divorce, the parties' combined annual income exceeded $150,000. (Tr. 189-190, 194). Thus, the trial court was not required to rely on a child support worksheet.

**{¶53}** Next, we must address appellant's argument that the trial court failed to find a deviation pursuant to R.C. 3119.22.

**{¶54}** R.C. 3119.22 provides for deviations from the child support worksheet:

> The court may order an amount of child support that deviates from the amount of child support that would otherwise result from the use of the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, if, after

considering the factors and criteria set forth in section 3119.23 of the Revised Code, the court determines that the amount calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, would be unjust or inappropriate and would not be in the best interest of the child.

If it deviates, the court must enter in the journal the amount of child support calculated pursuant to the basic child support schedule and the applicable worksheet, through the line establishing the actual annual obligation, its determination that that amount would be unjust or inappropriate and would not be in the best interest of the child, and findings of fact supporting that determination.

{¶55} But when the parties to the order have a combined annual income exceeding $150,000, the court follows a different procedure. Pursuant to R.C. 3119.04(B):

If the combined gross income of both parents is greater than one hundred fifty thousand dollars per year, the court, with respect to a court child support order, * * * shall determine the amount of the obligor's child support obligation on a case-by-case basis and shall consider the needs and the standard of living of the children who are the subject of the child support order and of the parents. The court or agency shall compute a basic combined child support obligation that is no less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of one hundred fifty thousand dollars, unless the court or agency determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that

amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings.

**{¶56}** In this case, because the parties combined income exceeded $150,000, the court was required to follow R.C. 3119.04 instead of R.C. 3119.22. The court did just that. It first found that based on the basic child support schedule for a combined income of $150,000, with credit to appellee for his new child and with appellee providing health insurance for the children, appellee's child support obligation would be $794.76 per month. Thus, the court noted, in accordance with R.C. 3119.04(B), that appellee's support obligation should be no less than this amount. The court next stated that if it used the extrapolation method, approved by this court for parties with a greater combined income of $150,000 in *DeBiase v. DiBiase*, 7th Dist. No. 12-JE-15, 2013-Ohio-2879, then the presumed amount of support would be $845.18 per month. Finally, the court considered the children's needs and standard of living as set out in R.C. 3119.04(B). After this consideration, the court determined appellee's child support obligation to be $900 per month. The trial court properly followed the applicable statute. Thus, the trial court did not err in failing to set out a deviation from the standard support as required by R.C. 3119.22.

**{¶57}** Accordingly, appellant's fifth assignment of error is without merit.

**{¶58}** Appellant's sixth assignment of error states:

THE TRIAL COURT ERRED IN DEVIATING FROM THE STANDARD CHILD SUPPORT GUIDELINES WITHOUT CONSIDERING THE FACTORS FOR THE DEVIATION UNDER R.C. 3119.23.

**{¶59}** In her final assignment of error, appellant contends the trial court erred in failing to consider R.C. 3119.23's factors in deviating from the standard child support guidelines. She asserts that the court should have, and failed to, consider the benefits appellee receives from remarriage and shared living expenses, the

disparity in income between the two households, and the standard of living and circumstances of each parent and standard of living the children would have enjoyed had the marriage continued. Appellant further contends that the court should have considered the fact that in 2008, appellee was earning $64,000 per year; however, he negotiated and agreed to have an income of $76,766 assigned to him for the purposes of calculating child support. Appellant claims the court should have acknowledged that appellee's income in 2012 is closer to the income assigned to him in 2008 than it actually was in 2008. Appellant goes on to argue that pursuant to R.C. 3119.79, appellee was required to demonstrate a substantial change in circumstances that was not contemplated by the parties at the time of the agreement on child support. She asserts that an increase in income would have been contemplated by the parties.

**{¶60}** R.C. 3119.23 contains a list of factors the court may consider in determining whether to deviate from the amount of child support as computed on the child support worksheet. These factors include the disparity in income between the two households, the benefits appellee receives from remarriage and shared living expenses, and the standard of living and circumstances of each parent and standard of living the children would have enjoyed had the marriage continued. R.C. 3119.23(G)(H)(L).

**{¶61}** In this case, however, the trial court was not required to specifically consider these factors. As appellee points out, this court's decision in *Cho*, 7th Dist. No. 03-MA-73, held that the trial court is not required to consider the R.C. 3119.23 factors when the parties' combined annual income exceeds $150,000.

**{¶62}** In *Cho,* we noted R.C. 3119.02 provides that when a court calculates a child support obligation, it must calculate the amount of the obligor's child support obligation in accordance with the basic child support schedule, the applicable worksheet, and the other provisions of R.C. 3119.02 to 3119.24. *Id.* at ¶10. We further noted that the basic child support schedule sets child support amounts for parties when the combined annual income is between $6,600 and $150,000. *Id.* We

then pointed out that R.C. 3119.22 provides that a court can deviate from the basic child support schedule and worksheet figure by considering the factors in R.C. 3119.23. *Id.* at ¶11.

**{¶63}** After examining the statutory language, we concluded that the basic child support schedule did not apply because the parties' combined annual income exceeded $150,000. *Id.* at ¶12. Instead, we found that R.C. 3119.04 applied. *Id.* at ¶13. We then held: "Since the child support schedule does not apply in cases involving combined yearly incomes of greater than $150,000, the trial court is not obligated to specifically consider those [R.C. 3119.23] factors." *Id.*, citing *Drumm v. Drumm*, 2d Dist. Nos. 16631 and 17115 (Mar. 26, 1999). Instead, we stated the trial court was to compute the child support obligation on a case-by-case basis in accordance with R.C. 3119.04(B). *Id.*

**{¶64}** Thus, in this case, the trial court was not required to specifically consider the R.C. 3119.23 factors. As set out in appellant's fifth assignment of error, the trial court properly applied the correct child support statute.

**{¶65}** Appellant also contends the court erred in failing to consider R.C. 3119.79 because appellee would have been required to demonstrate a substantial change in circumstances that was not contemplated by the parties at the time of the agreement on child support.

**{¶66}** R.C. 3119.79 provides:

(A) If an obligor or obligee under a child support order requests that the court modify the amount of support required to be paid pursuant to the child support order, the court shall recalculate the amount of support that would be required to be paid under the child support order in accordance with the schedule and the applicable worksheet through the line establishing the actual annual obligation. If that amount as recalculated is more than ten per cent greater than or more than ten per cent less than the amount of child support required to be paid pursuant to the existing child support order, the deviation from the recalculated

amount that would be required to be paid under the schedule and the applicable worksheet shall be considered by the court as a change of circumstance substantial enough to require a modification of the child support amount.

* * *

(C) If the court determines that the amount of child support required to be paid under the child support order should be changed due to a substantial change of circumstances that was not contemplated at the time of the issuance of the original child support order or the last modification of the child support order, the court shall modify the amount of child support required to be paid under the child support order to comply with the schedule and the applicable worksheet through the line establishing the actual annual obligation, unless the court determines that the amount calculated pursuant to the basic child support schedule and pursuant to the applicable worksheet would be unjust or inappropriate and would not be in the best interest of the child and enters in the journal the figure, determination, and findings specified in section 3119.22 of the Revised Code.

{¶67} R.C. 3119.79 is inapplicable to the case at bar. As to R.C. 3119.79(A), because the parties' original support order was not based on the child support worksheet, a ten-percent deviation would not necessarily be a change in circumstances. Furthermore, R.C. 3119.79(C) references R.C. 3119.22, which, as stated above is inapplicable in cases where the parties' income exceeds $150,000. Thus, the trial court was not required to consider R.C. 3119.79 in this case.

{¶68} Furthermore, even if the court was required to consider R.C. 3119.79, it complied. The trial court, although not making specific reference to the statute, found a significant change of circumstances. The court found there had been a change of circumstances because appellee's income had significantly decreased, appellant's income had significantly increased, and appellee had an additional child.

**{¶69}** Accordingly, appellant's sixth assignment of error is without merit.

**{¶70}** For the reasons stated above, the trial court's judgment is hereby affirmed.

Vukovich, J., concurs.

Waite, J., concurs.