[Cite as *Cummin v. Cummin*, 2015-Ohio-5482.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HOCKING COUNTY

| | | |
|---|---|---|
| KIMBERLY CUMMIN, | : | |
| | : | Case No. 14CA24 |
| Plaintiff-Appellee, | : | |
| | : | |
| vs. | : | DECISION AND JUDGMENT |
| | : | ENTRY |
| DAVID CUMMIN, | : | |
| | : | |
| Defendant-Appellant. | : | **Released: 12/21/15** |

_____

APPEARANCES:

Ryan Shepler, Kernen & Shepler, LLC, Logan, Ohio, for Appellant.

K. Robert Toy, Toy Law Office, Athens, Ohio, for Appellee.

_____

McFarland, A.J.

**{¶1}** Appellant, David Cummin, appeals the decision of the trial court issued upon cross motions to modify support. On appeal, Appellant raises two assignments of error, contending that 1) the trial court erred in extrapolating his child support obligation beyond the obligation for a combined income of $150,000.00, and 2) the trial court erred in calculating his income. Because we find no abuse of discretion in the trial court's decision to extrapolate the child support order based upon the parties' actual income, rather than capping it at a $150,000.00 income level, we find no merit to Appellant's first assignment of error and it is therefore overruled.

Because we find no error or abuse of discretion in the trial court's determination that Appellant was voluntarily underemployed and its decision to impute income, we overrule Appellant's second assignment of error, in part. However, because we cannot ascertain from the trial court's decision the amount of income actually imputed to Appellant, we sustain Appellant's second assignment in part and reverse and remand this matter for further proceedings consistent with this opinion.

FACTS

{¶2} The parties were married on July 18, 1992 and have four children, all of which are still minors. A divorce decree was issued on November 4, 2011. As part of the divorce decree, the trial court ordered shared parenting, ordered Appellant to pay child support based upon the parties' full combined annual income, which exceeded $300,000.00, and also ordered Appellant to pay spousal support to Appellee. Appellant is a physician and Appellee, at the time of the divorce, had been out of the work force for several years while raising the parties' four children. However, at the time of the divorce, it was anticipated that Appellee would return to work and the trial court imputed income in the amount of $65,000.00 to

Appellee for purposes of calculating child support.[1]  No initial direct appeal was taken from the divorce decree and associated orders.

{¶3} Subsequently, Appellant filed a motion to modify support on January 7, 2014.  Appellee then filed a cross-motion to modify child support, as well as a motion to modify visitation.  A final hearing was held on June 25, 2014, with the parties having already worked out the majority of the parenting time issues.  As such, the hearing primarily focused on financial issues that pertained to the motions to modify support.  Appellant's new wife, Crystal Cummin, testified at the hearing.  She testified that she and Appellant had been on several trips, including an Aruba vacation in which they took Appellant's children, a honeymoon to Croatia, a cruise to Puerto Rico, which was paid for by her employer, and a trip to New York.  She testified that she earns approximately $116,000.00 annually working for Johnson & Johnson.

{¶4} Appellant testified that he earns $25,100.00 annually as the elected county coroner, most recently had a business net income of $150,206.00 and also has rental property income.  He testified, however, that although he previously earned $11,000.00 annually as the hospital chief of staff, he would no longer receive that income because he was term-barred

---

[1] Appellee possesses a Master's degree and is a trained nutritionist, with experience in hospital administration.

from continuing in that position. He further testified that his rental income had decreased and would continue to decrease in future years, as he had lost tenants and did not expect to be able to find new tenants.[2] He also testified that his income had decreased due to the fact that he no longer performed inpatient hospital work. He testified that inpatient work did not pay well, and that he had reduced his work load in order to spend more time with his children. He estimated that he had decreased his weekly working hours from over one hundred hours to about seventy hours. On cross-examination, Appellant testified that he completed eighteen hours of continuing medical education while he was in Croatia for his honeymoon and, as a result, he deducted those travel expenses from his business income.

{¶5} Appellee also testified during the hearing. She testified that her annual income was between sixty-eight and sixty-nine thousand dollars, not including any support payments she receives. She testified that until recently, she had provided the children's health insurance benefits, despite the prior order that Appellant do so. She testified that it was her belief that Appellant's current income was $240,000.00 and that he was capable of earning that much.

---

[2] Appellant testified that the office space he has available for rent may only be rented to physicians and that there were no physicians in town to rent the space to.

{¶6} After considering the testimony of the parties and reviewing tax returns, the trial court issued its decision finding Appellant to be voluntarily underemployed. The trial court reduced spousal support by $100.00 a month, from $2,000.00 per month to $1,900.00, but increased child support from $832.59 per month to $1,371.83 per month. The trial court noted in its entry, in connection with its finding that Appellant was voluntarily underemployed, that "[t]he net results cannot be precisely computed but the Court has made an effort to develop a reasonable child support calculation." The trial court properly attached a child support computation worksheet to its decision, noting that it had calculated support based upon a $150,000.00 income limit as well as based upon the parties' actual combined annual income, which was $320,586.40, and had decided not to cap the support at the $150,000.00 limit. It is from this decision that Appellant now brings his timely appeal, setting forth two assignments of error for our review.

ASSIGNMENTS OF ERROR

"I.    THE TRIAL COURT ERRED IN EXTRAPOLATING DR. CUMMIN'S CHILD SUPPORT OBLIGATION BEYOND THE OBLIGATION FOR A COMBINED INCOME OF $150,000.

II.    THE TRIAL COURT ERRED IN CALCULATING DR. CUMMIN'S INCOME."

## ASSIGNMENT OF ERROR I

{¶7} In his first assignment of error, Appellant contends that the trial court erred in extrapolating his child support obligation beyond the obligation for a combined income of $150,000.00. Appellee argues that Appellant's argument is "nonsensical and just silly." We begin by considering the appropriate standard of review for trial court determinations regarding child support.

{¶8} "[A] trial court's modification of a prior child support order is within the broad discretion of the trial court and will not be disturbed absent an abuse of discretion." *Wolfe v. Wolfe*, 10th Dist. Franklin No. 04AP-409, 2005-Ohio-2331, ¶ 7; citing *Woloch v. Foster*, 98 Ohio App.3d 806, 810, 649 N.E.2d 918 (2nd Dist. 1994). Here, the trial court made an initial child support determination when the parties' divorce was final in 2011. The child support worksheet attached to the original divorce decree indicates that the trial court based the child support on the parties' actual income, rather than capping their combined income at $150,000 for purposes of calculating child support.[3] Appellant did not object to the trial court's use of the

---

[3] In actuality, the trial court used Appellant's actual income, but imputed income to Appellee in the amount of $65,000.00 as Appellee was a stay at home mother at the time of the divorce. At the time the original divorce decree was issued, the trial court determined the parties' combined annual income was $306,997.50.

"extrapolation method" at that time and no direct appeal was taken from that decision.[4]

{¶9} Three years later, the trial court modified its prior award of child support, once again using the "extrapolation method," rather than capping the parties' combined income at $150,000.00.  Because Appellant did not object to the trial court's method of calculating support initially, we conclude it is improper for him to raise that argument for the first time in this current appeal.  However, even if this argument is not waived, both statutory and case law indicate that it is within the trial court's discretion to either cap income at $150,000.00 or use parties' actual income when crafting a child support order.

{¶10} Again, we review child support matters under an abuse-of-discretion standard. See, *Booth v. Booth*, 44 Ohio St.3d 142, 144, 541 N.E.2d 1028 (1989).  An abuse of discretion "connotes more than an error of law or judgment; rather, it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).  When applying the abuse-of-discretion standard of review, appellate courts must not substitute their judgment for that of the trial courts. See, *In re Jane Doe* 1, 57 Ohio St.3d 135, 138, 566

---

[4] "This method takes the applicable percentage under the child support schedules for couples with combined incomes of $150,000 and applies it directly to whatever income the parents make." *Lanham v. Mierzwiak*, 197 Ohio App.3d 426, 2011-Ohio-6190, 967 N.E.2d 1256, ¶ 17 (6th Dist.).

N.E.2d 1181 (1991). Furthermore, an appellate court must presume that the findings of the trial court are correct because the finder of fact is best able to observe the witnesses and to use those observations to weigh witness credibility. *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 81, 461 N.E.2d 1273 (1984); see, also, *Mahlerwein v. Mahlerwein* 160 Ohio App.3d 564, 2005-Ohio-1835, 828 N.E.2d 153, ¶ 19 (4th Dist.).

{¶11} R.C. 3119.022 governs the procedure for awarding and calculating child support. The statute's overriding concern is to ensure the best interest of the child for whom support is being awarded. *Rock v. Cabral*, 67 Ohio St.3d 108, 110, 616 N.E.2d 218 (1993). Thus, the statute's provisions are mandatory in nature and courts must follow the statute literally and technically in all material aspects. *Marker v. Grimm*, 65 Ohio St.3d 139, 601 N.E.2d 496, paragraph two of the syllabus (1992); see, also, *Albright v. Albright*, 4th Dist. Lawrence No. 06CA35, 2007-Ohio-3709, ¶ 7. If a trial court makes the proper calculations on the applicable worksheet, the amount shown is "rebuttably presumed" to be the correct amount of child support due. See *Rock* at 110; Albright; see, also, R.C. 3119.03.

{¶12} Although we will discuss the trial court's calculation of Appellant's income more fully below, at this juncture we simply note that the trial court calculated the parties' combined annual income at the

modification hearing held in 2014, as $320,586.40.[5]  Thus, as with the

original calculation, the parties' combined income more than doubled the

$150,000.00 income figure limit Appellant argues child support should have

been based upon.  R.C. 3119.04, entitled "Determination of obligor's child

support obligation on a case-by-case basis for certain income amounts,"

provides in section (B) as follows:

> "If the combined gross income of both parents is greater than
>
> one hundred fifty thousand dollars per year, the court, with
>
> respect to a court child support order, or the child support
>
> enforcement agency, with respect to an administrative child
>
> support order, shall determine the amount of the obligor's child
>
> support obligation on a case-by-case basis and shall consider
>
> the needs and the standard of living of the children who are the
>
> subject of the child support order and of the parents. The court
>
> or agency shall compute a basic combined child support
>
> obligation that is no less than the obligation that would have
>
> been computed under the basic child support schedule and
>
> applicable worksheet for a combined gross income of one
>
> hundred fifty thousand dollars, unless the court or agency

---

[5] This figure represented Appellee's actual income, rather than imputed income as included in the original support order, as well as Appellant's actual income and potential income, as a result of the trial court's finding that Appellant was voluntarily underemployed.

determines that it would be unjust or inappropriate and would not be in the best interest of the child, obligor, or obligee to order that amount. If the court or agency makes such a determination, it shall enter in the journal the figure, determination, and findings."

{¶13} As such, based upon the foregoing, for parties with combined incomes exceeding $150,000.00, as is the case here, the trial court shall determine on a case-by-case basis, taking into consideration the needs and standard of living of the children, the amount of child support to be paid.  A plain reading of the statute reveals that the only time a trial court is required to make special findings is when it sets support in an amount less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of $150,000.00.  In that situation, a trial court must find that an award based upon a higher income amount would be unjust, inappropriate or not in the best interests of the child.

{¶14} Here, the trial court based the child support award upon the parties' full combined income amount and expressly included its reasoning for not capping support based on a $150,000.00 income figure.  The trial court stated as follows:

"The Court agrees that a support modification is now required. The attached support calculation is the basis for the modifications. See, Exhibit #1. Note that Exhibit #2 calculates the result if the Court were to limit the total income to $150,000.00. The Court finds the combined annual income figure is $320,586.00 and it would be unfair and not in the best interests of the children to utilize as the income figure the limited $150.000.00. See R.C. 3119.04(B)."

The trial court's express language in its order demonstrates that it considered the best interests of the children and the justness of limiting the award, when it rejected that approach in setting support. Although Appellant argues the findings the trial court made were against the manifest weight of the evidence, we disagree.

{¶15} Again, this was a modification hearing. In setting support when the parties first divorced, the trial court found that all the children enjoyed special educational opportunities and that the two youngest children required some special medical attention. Further, the evidence introduced at the modification hearing indicated Appellant travels extensively, sometimes with the children and sometimes without. This evidence is applicable in

considering the needs and standard of living of the children. Based upon the record before us, we find no abuse of discretion on the part of the trial court.

{¶16} Further, as Appellant himself notes in his brief, although this Court has not considered the "extrapolation method" of calculating support, other districts have determined that trial courts must only make special findings when support is determined in an amount less than the obligation that would have been computed under the basic child support schedule and applicable worksheet for a combined gross income of $150,000.00. *Lanham v. Mierzwiak*, supra, at ¶ 22 ("the statute does not require any explanation of its decision unless it awards less than the amount awarded for combined incomes of $150,000."); See also, *Gorman v. Gorman*, 7th Dist. Jefferson No. 12JE23, 2013-Ohio-5643, ¶ 56; *Chawla v. Chawla*, 10th Dist. Franklin No. 13AP-399, 2014-Ohio-1188, ¶ 16; quoting *Guertin v. Guertin*, 10th Dist. Franklin No. 06AP-1101, 2007-Ohio-2008, ¶ 6; quoting *Cyr v. Cyr*, 8th Dist. Cuyahoga No. 84255, 2005-Ohio-504, ¶ 56. That situation, however, is not applicable here. As such, because we can find no abuse of discretion on the part of the trial court in "extrapolating" child support based upon the parties' actual combined incomes, Appellant's first assignment of error is overruled.

ASSIGNMENT OF ERROR II

{¶17} In his second assignment of error, Appellant contends that the trial court erred in calculating his income. In particular, Appellant contends that the trial court erred in finding he was voluntarily underemployed and in imputing income to him. Appellant also contends that the evidence at trial does not support the gross income that the trial court attributed to him. Appellee responds by contending that the trial court did not err in calculating Appellant's income, and argues that the trial court found Appellant's testimony regarding his income not to be credible.

{¶18} In considering Appellant's argument that the trial court erred in determining Appellant was voluntarily underemployed and imputing income to him, we note that "R.C. 3119.01(C)(11)(a) authorizes a court to impute income to a parent whom the court finds is voluntarily underemployed, for purposes of calculating child support." *Breedlove v. Breedlove*, 4th Dist. Washington No. 08CA10, 2008-Ohio-4887, ¶ 14. "[W]hether a parent is voluntarily (i.e. intentionally) unemployed or voluntarily underemployed is a question of fact for the trial court. Absent an abuse of discretion that factual determination will not be disturbed on appeal." *Rock v. Cabral* at 112. The term abuse of discretion means more than an error of judgment; it implies

that the court's attitude is unreasonable, arbitrary, or unconscionable. *Warner v. Warner*, 4th Dist. Scioto No. 12CA3511, 2013-Ohio-478, ¶ 9.

{¶19} "In calculating child support, a trial court must determine the annual income of each of parent." *McLaughlin v. Kessler*, 12th Dist. Fayette No. CA2011-09-021, 2012-Ohio-3317, ¶ 13.  For an unemployed or underemployed parent, income is the "sum of the gross income of the parent and any potential income of the parent." Id.; R.C. 3119.01(C)(5)(b).  R.C. 3119.01(C)(11) provides as follows with regard to the definition of "potential income":

> " 'Potential income' means both of the following for a parent
> who the court pursuant to a court support order, or a child
> support enforcement agency pursuant to an administrative child
> support order, determines is voluntarily unemployed or
> voluntarily underemployed:
>
> (a) Imputed income that the court or agency determines the
> parent would have earned if fully employed as determined from
> the following criteria:
>
> (i) The parent's prior employment experience;
>
> (ii) The parent's education;
>
> (iii) The parent's physical and mental disabilities, if any;
>
> (iv) The availability of employment in the geographic area in
> which the parent resides;

(v) The prevailing wage and salary levels in the geographic area in which the parent resides;

(vi) The parent's special skills and training;

(vii) Whether there is evidence that the parent has the ability to earn the imputed income;

(viii) The age and special needs of the child for whom child support is being calculated under this section;

(ix) The parent's increased earning capacity because of experience;

(x) The parent's decreased earning capacity because of a felony conviction;

(xi) Any other relevant factor.

(b) Imputed income from any nonincome-producing assets of a parent, as determined from the local passbook savings rate or another appropriate rate as determined by the court or agency, not to exceed the rate of interest specified in division (A) of section 1343.03 of the Revised Code, if the income is significant."

"[B]efore a trial court may impute income to a parent, it must first find that the parent is voluntarily unemployed or underemployed." *McLaughlin* at ¶ 13; R.C. 3119.01(C)(11).

{¶20} In deciding if an individual is voluntarily underemployed "[t]he test is not only whether the change was voluntary, but also whether it was made with due regard to the obligor's income-producing abilities and her or his duty to provide for the continuing needs of the child or children concerned." *Woloch v. Foster,* supra, at 811. Moreover, "[a] child support obligee who claims that the obligor is voluntarily underemployed has the burden of proof on that issue." *Fischer v. Fischer*, 2nd Dist. Clark No. 11CA81, 2012-Ohio-2102, ¶ 24.

{¶21} Appellant contends that the trial court erred and abused its discretion in finding him to be voluntarily underemployed, arguing that it was understood during the original divorce proceedings that he intended to reduce his hours in order to spend more time with the children under the shared parenting order. Appellant claims he did just that but is now essentially being penalized for doing so in light of the trial court's finding that he is voluntarily underemployed. Appellant further contends that although he reduced his hours from over one hundred per week, he still works approximately seventy hours per week. He argues that the trial court's decision was an abuse of discretion based upon these facts. For the following reasons, however, we disagree.

**{¶22}** Initially we note that although Appellant argues he reduced his hours in order to spend more time with his children, which is understandable and even admirable, Appellant's subjective motivation for reducing his hours is not a factor in the determination. "The parent's subjective motivations for being voluntarily unemployed or underemployed play no part in the determination whether potential income is to be imputed to that parent in calculating his or her support obligation." *Rock v. Cabral*, supra, at 113. Further, whether a parent is underemployed is more than just an hours-worked determination. For instance, in *Chawla v. Chawla*, supra, a trial court imputed income to a physician parent of $550,000.00 despite the fact that the parent claimed his actual income was only 200,000.00. The trial court, however, based its decision upon the parent's earning potential and work experience, citing the fact the he had been offered, but did not take, a position earning $550,000.00. Although the parent argued he was unable to accept the position due to "unmet contingencies," the decision was affirmed on appeal. *Chawla* at ¶ 31.

**{¶23}** Here, the trial court did not exclusively focus on the fact that Appellant was working less hours. Rather, the trial court stated as follows in determining Appellant was voluntarily underemployed:

"Defendant's contention that he should have a major reduction in child support too is not credible. His private practice income has been reduced by increasing his deductions and reducing hours. At the same time he was quite willing to place upon Plaintiff the health, dental, and hospitalization insurance coverage for the children, until a better option arrived. He has also allowed some of his investments to become unproductive to reduce his income and taxes. He cannot expect Plaintiff to work full time when he wants to decline income opportunities. Defendant is voluntarily under-employed."

Thus, the trial court considered other issues such as Appellant's hiring of a new accountant and decision to pursue more aggressive tax deductions. For instance, the testimony introduced during the hearing also indicated that Appellant and his new wife honeymooned to Croatia and deducted that expense as business-related travel for tax purposes because Appellant completed continuing medical education while he was there.

{¶24} Appellant argues under this assignment of error that the evidence introduced at trial does not support the gross income that the trial court attributed to him. More specifically, Appellant argues that the trial court improperly included income from an expired lease, as well as ordinary

and necessary business expenses in his gross income for self-employment, for purposes of calculating child support. However, as indicated above, the trial court rejected Appellant's testimony regarding his business expense deductions, stating Appellant's testimony was not credible. The trial court also apparently rejected Appellant's claim that his rental income was permanently decreased due to losing a tenant in his office space, although it does appear the trial court did provide somewhat of a deduction on Appellant's rental income determination. It was within the trial court's discretion to make credibility determinations with respect to Appellant's claimed reduction in income. In addition, the trial court had before it for its review tax returns of the parties for the current year as well as the past three years.

{¶25} Based upon these facts, it appears that the trial court considered the appropriate statutory factors in determining Appellant was voluntarily underemployed. For instance, in making its decision, the trial court was well aware of Appellant's employment experience, education, availability of work in his geographic location, as well as Appellant's skills and training and ability to earn the imputed income. Further, the trial court stated earlier in its decision with respect to the requested modification of spousal support that "Defendant's income reduction is self-inflicted and could be altered

again abruptly."  For these reasons, we cannot conclude that the trial court abused its discretion in finding Appellant to be voluntarily underemployed and determining that income should be imputed to him.

{¶26} However, we do find one area of concern with the trial court's decision that requires a reversal and remand.  The Supreme Court of Ohio has stated that "an appellate court must be able to ascertain from the trial court's journal entry the amount of potential income imputed, and the trial court's reasons for imputing income to a child support obligor."  *Rock v. Cabral*, supra, at 113.  Here, although the record is clear on the reasons the trial court decided to impute income, we cannot ascertain from the trial court's journal entry the amount of potential income the trial court actually imputed to Appellant.  The trial court spoke to this problem in the entry, stating with respect to the voluntary underemployment determination, "[t]he net results cannot be precisely computed but the Court has made an effort to develop a reasonable child support calculation."  This simply does not comply with the requirements set forth in *Rock*.

{¶27} As such, and although we find no abuse of discretion on the part of the trial court in finding Appellant voluntarily underemployed and thus imputing income to him, we do find that the record is unclear as to how much income was imputed.  For this reason, this matter is reversed in part

and remanded to the trial court for further proceedings consistent with this

opinion.  We affirm the trial court's decision in all other respects.

**JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.**

## __JUDGMENT ENTRY__

It is ordered that the JUDGMENT BE AFFIRMED IN PART, REVERSED IN PART, AND REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION.  Appellant and Appellee shall split court costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Hocking County Common Pleas Court to carry this judgment into execution.

Any stay previously granted by this Court is hereby terminated as of the date of this entry.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Hoover, P.J. & Harsha, J.:  Concur in Judgment and Opinion.


For the Court,


BY:  _____
     Matthew W. McFarland,
     Administrative Judge


## NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**