OPINION
{¶ 1} Defendant-appellant, Stanley A. Logan, appeals from a judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, granting plaintiff a divorce from defendant and distributing the marital assets between them. Because the trial court did not abuse its discretion in concluding that defendant engaged in financial misconduct that affected the distribution of marital assets, and because the court further adequately considered the factors referenced in R.C. 3105.171(F), we affirm.
 {¶ 2} On August 8, 2000, plaintiff filed a complaint seeking a divorce from defendant. Defendant filed an answer and, on December 9, 2002, the parties began a contested hearing in the case.
 {¶ 3} Following the hearing, the trial court requested proposed findings of fact and conclusions of law from the parties. On February 7, 2003, the trial court entered a "Judgment Entry — Decree of Divorce" granting plaintiff a divorce from defendant, dividing the marital assets of the parties, refusing plaintiff's request for attorney fees, and ordering the costs of the case to be divided equally between the parties. Defendant appeals, assigning two errors:
Assignment of Error #1
The court erred in failing to consider both parties as contributing equally to the acquisition of marital assets in this matter as mandated by R.C. 3105.171(c)(2).
Assignment of Error #2
The trial court erred in failing to consider the factors specifically referenced in R.C. 3105.171(f) in dividing the assets and liabilities of the parties.
 {¶ 4} Defendant's first assignment of error asserts the trial court erred in failing to equally distribute the marital assets pursuant to R.C. 3105.171(C)(2), which states that "[e]ach spouse shall be considered to have contributed equally to the production and acquisition of marital property."
 {¶ 5} According to the evidence presented in the trial court hearing, the parties were married on June 25, 1977, and separated for a period of time during the first year of marriage. According to defendant, during the parties' marriage of over 20 years, he resided in the marital home all but four years; the four years he was away accumulated in blocks of weeks or months at a time.
 {¶ 6} Defendant claims an interest in the marital home because he helped rear plaintiff's children from her prior marriage, assisted with house payments, and bought food. Defendant has no receipts for the electric or water bills he allegedly paid, nor for any of the taxes or mortgage payments he made. He nonetheless asserts he contributed to those payments because he cashed his employment checks, bought groceries with them, and gave plaintiff the rest. According to defendant, his payments to plaintiff amounted to approximately $200 a week.
 {¶ 7} According to plaintiff's testimony, she owned the marital residence prior to her marriage to defendant, having received it in the settlement from her first divorce. When plaintiff married defendant, the home was already furnished; defendant brought virtually nothing but "a used crock pot and his clothing." (Tr. 134.) Moreover, she paid for all that has been accumulated since the marriage; defendant contributed nothing toward their purchase. Shortly after the marriage, plaintiff put in new kitchen cabinets in the home, with no contribution from defendant.
 {¶ 8} Contrary to defendant's testimony, plaintiff stated that, of the years the parties were married, defendant spent a total of approximately four and one-half years at the residence. When he lived with her, defendant gave her $50 to $60 a week for household expenses; when defendant was not living in the marital home, he did not contribute to the support of the household. Indeed, his failure to contribute financially to the marriage was a source of many arguments between them, as was his gambling, drinking and violence toward plaintiff and her children.
 {¶ 9} According to plaintiff, defendant never made one electric, insurance, or mortgage payment during their marriage. Rather, as her son corroborated in his testimony, plaintiff at times had to work two jobs in order to cover the financial obligations of their home. Indeed, two years into their marriage, she even sought a loan on defendant's behalf, because defendant would have been in harm's way if he did not repay a "bookie." She obtained a $5,000 loan and gave defendant $3,700 to $3,800 of it so he could repay his debt.
 {¶ 10} Plaintiff recalled two instances when defendant provided some assistance to the household. At one point the house required a new roof, and the parties split the $700 cost. Defendant also assisted by paying a neighbor $100 to put a shed on the marital property. Apart from those two instances, plaintiff essentially maintained herself, her household, and her children by herself.
 {¶ 11} The parties never filed a joint tax return. According to plaintiff's social security statement, admitted as defendant's Exhibit A, plaintiff earned $7,841 in 1977, $10,058 in 1978, and $8,919 in 1979. Her income in subsequent years increased to a maximum of $28,587 in 1993 and slightly decreased thereafter. According to defendant's social security statement, admitted as Exhibit B, he earned $9,783 in 1977, $5,325 in 1978, $10,166 in 1979, and $16,107 in 1980, up to a maximum of $25,405 in 1989. His income decreased to $14,469 in 1990, to slightly over $1,000 in 1991 and in 1992, and to nothing in 1993. Defendant earned slightly less than $10,000 in 1994, $19,706 in 1995, approximately $13,500 in 1996, slightly more than $10,000 in 1997 and in 1998, and $16,652 in 1999.
 {¶ 12} The trial court concluded plaintiff was entitled to a divorce on the grounds of incompatibility and living separate and apart for one year, as the parties had stipulated. The court deemed the duration of the marriage to be 22.5 years, from June 25, 1977 to January 1, 2000, the date defendant moved out of the marital premises for the last time.
 {¶ 13} In determining the distribution of marital assets, the trial court explicitly determined plaintiff and her witnesses were credible, and the testimony of defendant and his witnesses was not credible. Accordingly, the trial court found plaintiff was the owner of the marital home, having been awarded the home in a prior divorce. In terms of defendant's contributions to the home, the trial court determined defendant shared equally in the cost of the new roof, and he paid $100 to a neighbor who helped put a shed onto the marital property. The trial court, however, concluded defendant "failed to prove any additional expenditures he claims to have made toward improving the home." (Trial Court Decision, 2.)
 {¶ 14} Moreover, the trial court determined that "during the term of the marriage the Defendant used the Plaintiff's home as essentially a pit stop. The Defendant did not spend extensive time in the home, nor did he contribute financially to the support of the Plaintiff or the household in any significant way. During the Defendant's extended absences from the home, he did not contribute at all to the support of the Plaintiff or the household." (Trial Court Decision, 4.)
 {¶ 15} Applying the definitions in R.C. 3105.171(A)(3) and (A)(6), the trial court concluded that the marital home is plaintiff's separate property. Determining that the only appreciable contribution defendant made to the improvement of the home was $350 he paid toward the roof and $100 he paid toward the utility shed, the trial court awarded defendant $450.
 {¶ 16} The trial court further found that plaintiff's 401(k) savings plan is marital property pursuant to R.C. 3105.171(A)(3)(a)(i), and that the household goods and furnishings are marital property pursuant to R.C. 3105.171(A)(3). The trial court acknowledged defendant ordinarily would be entitled to an equitable split of those assets, but the trial court concluded defendant "has engaged in financial misconduct by his complete failure to support the Plaintiff and the marital household." (Trial Court Decision, 6.) See R.C. 3105.171(E)(3). In support, the court noted that defendant's frequent and prolonged absences from the marital home created a financial hardship for plaintiff, who was burdened with supporting the entire household on her own, while defendant drifted in and out of her life. Given those facts, the trial court determined that a greater award of marital property to plaintiff would be equitable.
 {¶ 17} Accordingly, the trial court awarded plaintiff the marital home. It further ordered that the $450, to which the court determined defendant was entitled, be offset by the amount defendant owed plaintiff for the gambling loan of $3,800. The offset left defendant still owing plaintiff $3,350. The trial court further awarded plaintiff her entire interest in the 401(k) savings plan, free of any claims of defendant. Aware that defendant typically would have been entitled to half of that asset, or $6,756.79 as of January 2000, the trial court offset that amount against the $3,350 defendant owed plaintiff on the gambling loan. Because of defendant's financial misconduct, the trial court refused to award to defendant the remaining $3,406.79 from what would have been his interest in the 401(k).
 {¶ 18} The trial court further awarded plaintiff all household goods and furnishings still in the marital home; the court refused to award any to defendant because of his failure to contribute to the marital household, which the trial court concluded was financial misconduct. Instead, defendant was awarded any household goods and furnishings then in his possession. Lastly, the court denied plaintiff's request for attorney fees and costs, and instead it ordered the parties to split the cost of the case.
 {¶ 19} The Supreme Court of Ohio has long recognized that a trial court is vested with broad discretion in dividing marital property in divorce proceedings. Berish v. Berish (1982), 69 Ohio St.2d 318, 319. "R.C. 3105.171(B) and (C)(1) provide that in a divorce proceeding, all martial property is to be divided equally unless an equal division would be inequitable. If an equal division would be inequitable, that marital property is to be divided in an equitable manner." Syslo v. Syslo, Lucas App. No. L-01-1273, 2002-Ohio-5205, ¶ 68. In accord with the general rule, "if a spouse has engaged in financial misconduct, including but not limited to, the dissipation, destruction, concealment or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." Id.
 {¶ 20} In reviewing a trial court's property division, an appellate court is to consider the distribution under the totality of the circumstances, and it should not reverse the trial court's judgment in the absence of an abuse of discretion. Jelen v. Jelen (1993),86 Ohio App.3d 199, 203.
 {¶ 21} Initially, the trial court, within its discretion, determined plaintiff's witnesses were credible and defendant's witnesses were not. Based on the testimony of plaintiff's witnesses, the trial court concluded defendant engaged in financial misconduct. Specifically, the trial court relied on evidence that defendant earned income in nearly every year of the parties' marriage. Nonetheless, he contributed financially to the household only when he resided there, or for about four and one-half years. His contributions were approximately $50 to $60 a week, or about $200 to $250 a month, amounting to a total of about $10,500 to $13,500 for the entirety of the parties' approximately 22-year marriage. The remainder of defendant's income he spent either on himself or on objects of his choosing.
 {¶ 22} Frequently, the time frame when marital assets are dissipated is a relevant factor in determining an inference of wrongdoing, or misconduct, especially when the dissipation occurs during the parties' separation. See Hammond v. Brown (Sept. 14, 1995), Cuyahoga App. No. 67268. However, as the court noted in Donato v. Donato (June 26, 1998), Lake App. No. 96-L-224, "every factual scenario is different. We cannot say as a matter of law that the trial court erred in the case at bar by adopting a finding that the unilateral dissipation of marital funds, which occurred during the marriage and prior to separation,
constituted financial misconduct * * *." (Emphasis sic.)
 {¶ 23} Here, the trial court did not abuse its discretion in concluding defendant's dissipation of the marital assets in the form of his earned income constitutes financial misconduct. Baum v. Baum (Nov. 26, 1997), Wayne App. No. 97CA0022 (finding no abuse of discretion in trial court's determination that husband engaged in financial misconduct where, other than to buy food, husband retained his entire salary for himself and even diverted rent payments that were made by the parties' tenants, and the record clearly demonstrated that the husband's misconduct had an adverse impact on the wife's financial situation);Syslo, supra (finding no abuse of discretion in the trial court's concluding appellant was guilty of financial misconduct by selling or disposing of the marital property, tax refunds and appellee's personal property, including giving federal income tax refund check and state income tax refund check to appellant's brother, all of which deprived the appellee of substantial personal property and the distribution of marital assets); Newman v. Newman (Mar. 31, 1995), Lucas App. No. L-93-354 (finding husband dissipated marital assets when he kept his salary, rent from rental property, cashed almost $20,000 worth of the parties' certificates of deposit, and let back taxes accumulate on the rental property).
 {¶ 24} We do not suggest that every spouse who does not contribute financially to the marital household is engaged in financial misconduct. Indeed, such a holding would be contrary to R.C. 3105.171(C)(1). Rather, here, defendant not only earned money, a marital asset, but squandered it during the parties' marriage. On this record, the trial court did not abuse its discretion in finding that defendant's dissipation of the marital assets during the marriage should be considered in the distribution of marital assets following divorce. Defendant's first assignment of error is overruled.
 {¶ 25} Defendant's second assignment of error asserts the trial court failed to consider the factors specifically referenced in R.C.3105.171(F) when the court divided the assets and liabilities of the parties.
 {¶ 26} "[I]n making a division of marital property or a distributive award, the trial court is required to consider all nine factors listed in R.C. 3105.171(F) and make written findings of fact to support its determination. The factors the court is to consider are: (1) the duration of the marriage, (2) the assets and liabilities of the parties, (3) the desirability of awarding the marital home to the spouse with custody of the children, (4) the liquidity of the property to be distributed, (5) the economic desirability of retaining intact an asset or an interest in an asset, (6) the tax consequences of the property division, (7) the costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property, (8) any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses, and (9) any other factor that the court expressly finds to be relevant and equitable." Syslo at ¶ 68.
 {¶ 27} The trial court in its decision considered all of the factors on which the parties presented evidence. A court, however, does not need to speculate as to potential factors where an appellant has failed to produce evidence in the trial court. Syslo at ¶ 72. In the absence of evidence regarding some of the factors the trial court was to consider under R.C. 3105.171(F), the trial court, in this case, was not required to speculate about them. Instead, the trial court considered the evidence presented and determined the split of marital assets based on that evidence. Defendant's second assignment of error is overruled.
 {¶ 28} Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.
Judgment affirmed.
PETREE, P.J., and BROWN, JJ., Concur.