[Cite as *Kowalkowski-Tippett v. Tippett*, 2021-Ohio-4220.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| Christine E. Kowalkowski-Tippett, | : | |
| Plaintiff-Appellant, | : | |
| | | No. 20AP-228 |
| v. | : | (C.P.C. No. 18DR-1326) |
| Henry C. Tippett, Jr., | : | (REGULAR CALENDAR) |
| Defendant-Appellee. | : | |

D E C I S I O N

Rendered on December 2, 2021

**On brief:** *Vassy Law Office,* and *Nicholas E. Vassy*, for appellant. **Argued:** *Nicholas E. Vassy.*

**On brief:** *Ric Daniel*, for appellee. **Argued:** *Ric Daniel.*

APPEAL from the Franklin County Court of Common Pleas,
Division of Domestic Relations

DORRIAN, P.J.

{¶ 1} Plaintiff-appellant, Christine E. Kowalkowski-Tippett, appeals a March 20, 2020 judgment entry/decree of divorce ("decree") from the Franklin County Court of Common Pleas, Division of Domestic Relations granting a mutual divorce to appellant and defendant-appellee, Henry C. Tippett, Jr. For the following reasons, we affirm in part and reverse in part the judgment of the trial court and remand.

## I. Facts and Procedural History

{¶ 2}   The parties were married in Franklin County, Ohio, on July 19, 1990.  Five children were born as issue of the parties' marriage.  As of trial, one child had not reached the age of majority, namely S.A., born in 2001.[1]

{¶ 3}   In March 2011, the Drug Enforcement Agency ("DEA") conducted a raid that involved the parties.  Due to the pending charges, the parties believed they would both face incarceration and, therefore, the parties effectuated mutual powers of attorney ("POA").  Appellee signed a power of attorney appointing appellant as his attorney in fact on May 1, 2012 ("2012 POA").  Although not admitted into evidence at trial, appellant testified she also executed a POA for appellee to serve as her power of attorney in the event of her incarceration.  In addition to the parties' mutual POAs, the parties also signed POAs to a third party.

{¶ 4}   The parties were indicted on charges in October 2014 stemming from the DEA's raid.  On July 1, 2015, appellee's bond was unexpectantly revoked at a criminal hearing and he was taken into custody.  Appellant testified that appellee called her after he was in custody and directed her to take a new POA he had prepared and sign it and get it notarized.[2]  Appellant explained that this POA would give authority to the parties' adult children to act on appellee's behalf in the event appellant was also incarcerated.  Appellant signed the POA on July 15, 2015 ("2015 POA") as appellee, and appointed the parties' adult children, Cody, Colton, and Tia Tippett, as appellee's lawful attorney.  Appellant was eventually incarcerated from June 2016 until August 2017.  As of the final hearing in the

---

[1] Appellant's complaint for divorce requested she be named residential parent and legal custodian of S.A., appellee's counterclaim also requested that custody of S.A. be awarded to appellant.

Pursuant to R.C. 3109.04(A): "In any divorce * * * proceeding * * *, upon hearing the testimony of either or both parents * * * the court shall allocate the parental rights and responsibilities for the care of the minor children of the marriage." R.C. 3109.01 identifies the age of majority as "[a]ll persons of the age of eighteen years or more, who are under no legal disability."

The trial did not allocate parental rights and responsibilities for S.A. Specifically, the trial court held, "[t]he Court makes no orders as to parenting time given that [S.A.] will be eighteen (18) years of age [i]n May * * * 2020." (Decree at 2.)  Because this issue was not raised on appeal and S.A. has reached the age of majority, we decline to further address the issue.

[2] Although not raised by either party on appeal, we note the 2015 POA was signed by appellant on July 15, 2015, however the date of the notary stamp is January 17, 2017.

action for divorce, appellee remained incarcerated and was expected to be released in June 2021.

{¶ 5}   Relevant to the issues presented on appeal, the parties owned a residence they purchased during their marriage located on James Circle, Lake Alfred, Florida ("Florida property").  Appellee's parents resided in the Florida property for five years while the parties paid the mortgage, however, two months after appellee was incarcerated they vacated the property.  Thereafter, appellant engaged a property manager to find tenants to rent the Florida property and the rent received would be used to pay the mortgage on the property.

{¶ 6}   At the time appellant was incarcerated in June 2016, tenants occupied the Florida property.  Around July or August 2017, two weeks prior to her release from incarceration, appellant was served with a complaint to foreclose on the parties' mortgage on the Florida property.  Appellant testified that while the parties were incarcerated the mortgage on the Florida residence was not paid.  Appellant contacted the bank about the status of the parties' mortgage and learned the parties owed $15,000.  Appellant discussed with the bank options for the parties' deficit, however, appellant was not able to refinance or apply for a loan due her recent incarceration effectively preventing her from providing the requested proof of six months' employment and two years of tax returns necessary to remediate the mortgage.  Appellant also spoke with legal counsel regarding the foreclosure and sent correspondence to the court in an attempt to avoid foreclosure on the property.

{¶ 7}   Appellant testified she discussed the foreclosure action with appellee who proposed that appellant should make partial payments; meaning appellant would pay short of the monthly amount owed.  Appellant testified the parties' daughter attempted this with the parties' marital residence and found that the bank would return the short payment, effectively resulting in non-payment.  In the alternative, appellee desired to sell the Camaro.  Appellant testified she explained to appellee the Camaro had damage to the rear, side, and front bumper.

{¶ 8}   Ultimately, appellant did not believe that appellee had a practical solution to prevent the foreclosure and she did not have $15,000 to pay the mortgage.  Appellant testified that she believed a foreclosure would result in further liabilities to the parties, and therefore she sold the Florida property in a short sale.  The Florida property was sold on

October 17, 2017.  The record evidences a warranty deed reflecting appellee and appellant were named grantors on a warranty deed executed on October 17, 2017 for the sale of the Florida property.  The signature page of the warranty deed reflects the signatures of appellant and appellee's attorneys in fact, the adult children, who signed pursuant to the 2015 POA.

{¶ 9}   Records from the sale of the Florida property evidence that the proceeds of the sale totaled $51,053.51 and were disbursed on October 17, 2017.  Due to the parties' federal tax liens, the proceeds from the sale were deposited into Tia's bank account because appellant's account would have been garnished.  Appellant testified that the proceeds from the sale of the Florida property were spent on the following expenses: one-third to one-fourth of the total received went toward joint marital debt ("[m]ine, mine or/and his." Tr. at 139.); repairs to two residential properties of the parties; support for the parties minor child S.A.; groceries for the household located at Hunting Creek Drive, which included appellant, S.A., and the adult children; and Christmas presents for the parties' five children, their spouses and seven grandchildren.  The accounting also reflects $5,000 was used by Tia to purchase a vehicle, a Pontiac, in addition to car repairs and purchases for the parties' adult children.

{¶ 10} Appellant presented evidence through an exhibit that enumerated the expenses paid with the proceeds of the sale of the Florida property.  The exhibit reflects the following:

| | | |
|---|---|---|
| Capital One | 3678.55 | |
| Kohls | 1232.35 | |
| Chase | 3500 was 1099ed for difference [sic] | |
| Target | 2250 | |
| synchrony (hhgregg) | 1541.42 | |
| | 12202.32 | |
| | | |
| Groceries | 3312.53 | |
| Tia car tax and title | 5000 | |
| Car Insurance | 1245.39 | |
| Christmas | 4599.05 | |
| 1993 3 months rent/carp | 5662.91 | |
| house bills | 403.92 | |
| gas | 365.87 | |
| car parts | 3348.39 | blew tranny [sic] |
| my phone bill | 97.23 | |
| Tip | 208.95 | |

|  |  |
|---|---|
| court fees | 387.26 |
| shopping kids clothes | 843.38 |
| sub total | 37677.2 |
| milams | 4500 |
| codys car | 1400 |
| my car and parts | 2000 |
| cody tools for school | 500 |
| groceries | 500 |
| house repairs | 3650 |
|  | 50227.2 |

(Ex. 15A.) The expenses paid by the proceeds totaled $50,227.20.

{¶ 11} Appellant filed a complaint for divorce on April 3, 2018. Appellee filed an answer on August 17, 2018 and an amended answer and counterclaim on November 9, 2018. Appellee's amended answer and counterclaim did not allege financial misconduct on the part of appellant. However, the pre-trial statement filed by appellee stated that he believed the Florida property "may have been sold inappropriately." (Appellee's Oct. 11, 2018 Pre-Trial Stmt. at 2.) Appellant filed an answer to appellee's counterclaim the following day. The matter was set for trial after the first pre-trial. Appellant and Tia were the only witnesses to testify during the two days of trial. Appellee remained incarcerated at the time of trial and therefore was not present to testify, however, he was represented by counsel who engaged in cross-examination of the witnesses. In closing argument, appellee's counsel did not argue that appellant engaged in financial misconduct. Appellee did not file with the court proposed findings of fact even though the trial court invited both parties to file the same.

{¶ 12} The trial court issued a decree on March 20, 2020 granting each party an absolute divorce from the other party. The court determined the duration of the parties' marriage, awarded appellant certain separate property, divided the parties' marital property, and made a finding of financial misconduct against appellant with regard to the sale of the Florida property which resulted in a distributive award to appellee.

## II. Assignments of Error

{¶ 13} Appellant appeals and assigns the following two assignments of error for our review:

> [I.] the Trial Court Erred when it Found Appellant Guilty of Financial Misconduct Based Upon the Transfer of the Parties' Property Located at [] James Circle, Lake Alfred, Florida.

[II.] The Trial Court Erred when it Abused its Discretion in Dividing the Marital Assets and Debts.

## III. Analysis

### A. Appellant's First Assignment of Error

{¶ 14} Appellant argues in her first assignment of error that the trial court abused its discretion when it found appellant engaged in financial misconduct related to the sale of the parties' Florida residence.

{¶ 15} This court has held, "[f]inancial misconduct occurs when one spouse engages in some type of knowing wrongdoing, by which the spouse either profits or intentionally interferes with the other spouse's property rights." *Chawla v. Chawla*, 10th Dist. No. 13AP-399, 2014-Ohio-1188, ¶ 35, citing *Taub v. Taub*, 10th Dist. No. 08AP-750, 2009-Ohio-2762, ¶ 33; *Heller v. Heller*, 10th Dist. No. 07AP-871, 2008-Ohio-3296, ¶ 27; *Hamad v. Hamad*, 10th Dist. No. 06AP-516, 2007-Ohio-2239, ¶ 62. "If a spouse has engaged in financial misconduct, including, but not limited to, the dissipation, destruction, concealment, nondisclosure, or fraudulent disposition of assets, the court may compensate the offended spouse with a distributive award or with a greater award of marital property." R.C. 3105.171(E)(4). A "distributive award" under R.C. 3105.171(E)(4) is defined as any payment or payments, in real or personal property, that are payable in a lump sum or over time, in fixed amounts, that are made from separate property or income, and that are not made from marital property. R.C. 3105.171(A)(1). The complaining spouse bears the burden of proving financial misconduct. *Chawla* at ¶ 36, citing *Heller* at ¶ 27; *Hamad* at ¶ 61; *Galloway v. Khan*, 10th Dist. No. 06AP-140, 2006-Ohio-6637, ¶ 26.

{¶ 16} An appellate court will not reverse a trial court's determination regarding financial misconduct unless it is against the manifest weight of the evidence. *Best v. Best*, 10th Dist. No. 11AP-239, 2011-Ohio-6668, ¶ 18. A decision is not against the manifest weight of the evidence where some competent, credible evidence supports the trial court's findings. *Taub* at ¶ 15, citing *Pearson v. Pearson*, 10th Dist. No. 96APF08-1100 (May 20, 1997), citing *State v. Schiebel*, 55 Ohio St.3d 71, 74 (1990). Weight of the evidence and credibility of witnesses are issues left to the sound discretion of the trial court. *Galloway* at ¶ 29, citing *White v. White*, 4th Dist. No. 03CA11, 2003-Ohio-6316, ¶ 15.

{¶ 17} Here, the trial court found financial misconduct occurred when the Florida property was transferred to third parties without the express authorization of appellee. The trial court's determination of financial misconduct was based on the following findings: (1) the 2015 POA was not valid,[3] (2) the parties' adult children were not authorized to make financial decisions on appellee's behalf, (3) appellant exceeded the authority granted to her by the 2012 POA, (4) the Florida property was marital in nature, (5) appellant and the parties' children profited from the sale of the Florida property, and (6) the proceeds of the Florida property's sale were not divided with appellee. In accord with its finding, the court compensated appellee with a distributive award in the amount of $25,526.76, an amount representing half the proceeds of the sale of the Florida property. Appellant argues the trial court's determination that appellant engaged in financial misconduct related to the sale of the Florida property is not supported by evidence she engaged in wrongdoing (i.e., wrongful scienter).[4]

{¶ 18} In support, appellant first argues that the timeframe of the alleged misconduct does not establish knowing wrongdoing by appellant. To the contrary, appellee points to the timing of the sale of the Florida property on October 17, 2017 and the timing of appellant's filing for divorce less than six months later as evidence in support of the finding of financial misconduct.

---

[3] The decree reflects the trial court examined the validity of the POAs executed in 2012 and 2015 and found that the 2012 POA was valid. However, the court further found that the 2015 POA was invalid because the 2012 POA did not expressly authorize appellant to transfer the POA to a third-party, appellee was not present at the signing of the 2015 POA, and appellee did not sign the 2015 POA.

[4] Appellant also argues that the court erred because she was authorized to transfer property on appellee's behalf pursuant to the 2012 POA. Appellant submits that the trial court found the 2012 POA to be valid and contends that had she been able to locate the 2012 POA she would have been able to use her authority to transfer appellee's interest in the Florida property. Appellant cites in support the following provisions from the 2012 POA:

(A) To take possession of, hold, and manage my real and personal property; * * * (G) To sell, exchange, lease, give options, and make contracts concerning real or personal property, for such considerations and on such terms as my attorney in fact my [sic] consider prudent; * * * (N) To execute in my name and deliver contracts, deeds, mortgages, leases, security agreements, receipts, releases, returns, reports, and other documents of any kind, as necessary or proper to give effect to any of the powers under this instrument.

However, the 2012 POA was not used to transfer appellee's interest in the Florida property.

{¶ 19} This court has recognized that the timeframe from when marital funds are dissipated is a relevant factor in determining an inference of wrongdoing or misconduct. *Chawla* at ¶ 37, citing *Logan v. Logan*, 10th Dist. No. 03AP-225, 2003-Ohio-6559, ¶ 22, citing *Hammond v. Brown*, 8th Dist. No. 67268 (Sept. 14, 1995). Courts have found this to be true especially when the dissipation occurs during the parties' separation, but caution that a finding of financial misconduct can also be found during the marriage and prior to the parties' separation, as every set of facts is different. *Id.*

{¶ 20} The Florida property was sold on October 17, 2017 and the proceeds were disbursed the same day. Appellant filed her complaint for divorce on April 3, 2018. As of the time of the parties' final divorce hearing, the proceeds from the sale of the Florida property were spent. Although there exists only six months between appellant receiving the proceeds from the sale of the Florida property and the filing of her action for divorce, we do not find that the timeframe alone, on the facts of this case, infers knowing wrongdoing.

{¶ 21} Appellant points out and the record supports that the 2015 POA was executed on July 15, 2015. At the time the 2015 POA was executed, the Florida property was inhabited by appellee's parents with the expectation that the mortgage on the property would be paid. Once appellee's parents vacated the property, appellant arranged for tenants to rent the property with the intention that the rental payments would pay the mortgage on the property. It was not until July or August 2017, near appellant's release from incarceration, that appellant became aware there was a financial issue with the Florida property. The Florida property was sold thereafter on October 17, 2017. From the time the 2015 POA was executed more than two years passed until the Florida property was sold.

{¶ 22} Appellant next asserts the record does not support that she engaged in knowing wrongdoing at the time the 2015 POA was executed. In support of the finding of knowing wrongdoing, appellee points to evidence that he was incarcerated when the 2015 POA was signed, therefore he was unable to intervene. He also argues the 2015 POA did not disclose that it was signed by an agent on behalf of appellee.

{¶ 23} Appellant argues that in analyzing the 2015 POA, the trial court's focus on the principal-agent doctrine was misplaced. Appellant argues instead that the question before

the court was whether the execution of the 2015 POA by appellant was knowingly wrongful, not whether the 2012 and 2015 POAs were valid instruments.

{¶ 24} Appellant testified that she believed the 2012 POA allowed her to make decisions concerning the parties' businesses, homes, money, taxes, and debts. Appellant also testified that appellee directed her to execute the 2015 POA. Appellant testified that she expected to be incarcerated at some point, rendering her unable to exercise her authority under the 2012 POA and further testified that the intention of the 2015 POA was for the parties' adult children to act on the behalf of appellee and appellant in the event appellant was also incarcerated.

{¶ 25} In appellee's absence, the 2015 POA was signed by appellant as "Henry Tippett." When asked why the signature did not indicate that appellant was signing the 2015 POA on appellee's behalf, appellant testified she was unaware that she needed to sign the 2015 POA in a manner other than what she had. According to appellant, she signed the 2015 POA, first, under the belief that she had the authority pursuant to the 2012 POA; second, because appellee directed her to do so; and third, because the parties spoke with the 2012 POA notary who was aware of the parties' impending criminal circumstances. Based on her understanding of the authority granted to her by the 2012 POA, appellant believed she was authorized to transfer appellee's interest in the Florida property and, further, that she was also authorized to assign her authority to the parties' adult children. Appellant's testimony regarding her understanding of the authority granted to her pursuant to the 2012 POA was not disputed. Also not disputed was appellant's testimony that appellee had directed her to sign the 2015 POA.

{¶ 26} Appellant also supports her argument that the record does not reflect knowing wrongdoing by asserting that the sale of the Florida property was the only rational decision that could have been made under the circumstances; therefore, the action taken by appellant to sell the Florida property was not a dissipation of the parties' assets, but a decision that avoided the parties incurring a deficiency judgment.

{¶ 27} As discussed, once appellee's parents vacated the Florida property, appellant arranged with a property manager for tenants to occupy the property with the intention that rent would pay the mortgage. While appellant was imprisoned, the mortgage went unpaid and the Florida property was in foreclosure. The record reflects that upon being

served with the complaint for foreclosure, appellant explored the options available to maintain the Florida property, but was unable to refinance or continue to pay the mortgage. At oral argument here, counsel for appellee stated that the sale of the Florida residence was against appellee's wishes. Appellant testified only that appellee wanted to either provide short payments to the bank or sell the Camaro. Appellant testified that it was her understanding from her daughter that the bank would not accept short payments and the Camaro was damaged. As to why she opted to sell the Florida property, appellant testified that she believed a foreclosure action would have resulted in a deficit, and debt to the parties.

{¶ 28} Finally, appellant contends that although she profited from the sale of the Florida property, it was not at the expense of appellee. Appellee argues none of the proceeds from the sale were given to him or used to benefit him.

{¶ 29} It is without question that appellant realized proceeds totaling $51,053.51 when the Florida property was sold. However, appellant's testimony regarding the use of the proceeds, as corroborated by Tia, reflects evidence establishing that the expenses paid with the proceeds of the sale may have been at least in part marital, rather than separate. The record also reflects that the parties relied on their adult children to keep them financially solvent and that appellee asked for a group effort between the parties and their adult children to maintain the parties' property, living expenses, and bills during the parties' incarceration. Appellant testified that the proceeds used for living expenses were for appellant and the parties' children, stating that "[w]e operate together. It takes all of us to get it done." (Tr. at 75.) The collective effort of the family related to finances was also evidenced through Tia's testimony that for at least the last four years she has provided financial support to the Hunting Creek household and for her youngest brother S.A. As of the final hearing, appellee had been incarcerated since July 15, 2015 and had not financially supported the family since.

{¶ 30} On the facts and circumstance of this case, we find the record does not reveal competent, credible evidence that appellant engaged in knowing wrongdoing when she signed the 2015 POA on appellee's behalf, and when she and the adult children sold the Florida property. Therefore, on remand the trial court must vacate the distribution award based on the finding of financial misconduct when the Florida property was sold and the

2015 POA was signed. However, the question remains whether appellant committed financial misconduct when she and the children used the proceeds from the sale of the Florida property to pay the expenses outlined in exhibit 15A.[5]

{¶ 31} Accordingly, we sustain in part and decline to address in part appellant's first assignment of error and remand for the trial court to make a determination in the first instance regarding the nature of expenses paid for by the proceeds of the sale of the Florida property.

### B. Appellant's Second Assignment of Error

{¶ 32} Appellant's second assignment of error asserts the trial court abused its discretion in awarding an unequal division of marital assets and debts. In support, appellant contends the trial court did not equally divide the marital assets of the parties and failed to provide written findings of fact that would support the court's division of the parties' marital property as required by R.C. 3105.171(G).

{¶ 33} In a divorce proceeding, the domestic court has broad discretion to make divisions of property. *Smoyer v. Smoyer*, 10th Dist. No. 18AP-365, 2019-Ohio-3461, ¶ 24, citing *Middendorf v. Middendorf*, 82 Ohio St.3d 397, 401 (1998). A court should not review discrete aspects of a property division out of the context of the entire award. *Hamad* at ¶ 54, citing *Baker v. Baker*, 83 Ohio App.3d 700, 702 (9th Dist.1992). Rather, a court should consider whether the trial court's disposition of marital property as a whole resulted in a property division which was an abuse of discretion. *Id.*

{¶ 34} We will uphold a trial court's valuation and division of property absent an abuse of discretion. *Hood v. Hood*, 10th Dist. No. 09AP-764, 2010-Ohio-3618, ¶ 13, citing *Middendorf* at 401. A trial court abuses its discretion when it acts in an unreasonable, arbitrary, or unconscionable manner. *Chawla* at ¶ 12, citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983). "Conversely, there is no abuse of discretion where there is some

---

[5] As noted previously, appellant provided exhibit 15A listing all the expenses paid by the proceeds from the sale of the Florida property. However, the trial court did not make findings as to whether each line item expense was marital or separate. Nor did the trial court make a finding that all of the expenses were separate. The court stated simply "[appellant] testified that the money received from the Florida property was used to pay down some of her debt, make repairs to the marital residence, pay off the 2010 Camaro, and buy the 2008 Pontiac. * * * [Appellant] and the children profited from the sale of the property [and] [appellant] did not divide the proceeds of the sale with [appellee]." (Decree at 3, 8.) On remand, the trial court shall consider whether the line item expenses were marital or separate. If the court finds any of the line items were appellant's separate expenses, pursuant to R.C. 3105.171, the trial court may consider the same in dividing martial property and/or making a distributive award as it deems appropriate.

competent, credible evidence supporting the trial court's decision." *Smoyer* at ¶ 24, citing *Chawla* at ¶ 12, citing *Ross v. Ross*, 64 Ohio St.2d 203 (1980). When applying the abuse of discretion standard, a reviewing court may not substitute its judgment for that of the trial court. *Id.*, citing *Blakemore* at 219.

{¶ 35} In divorce proceedings, the trial court must classify property as marital or separate, determine the value of the property, and divide the marital and separate property equitably between the spouses. R.C. 3105.171(B); *Hood* at ¶ 13, citing *Roberts v. Roberts,* 10th Dist. No. 08AP-27, 2008-Ohio-6121, ¶ 16. R.C. 3105.171(C)(1) provides that the trial court must divide marital property equally unless an equal division would be inequitable; in dividing marital property, the court must consider all relevant factors, including the ten set forth in R.C. 3105.171(F). Those factors are:

> (1) The duration of the marriage;
>
> (2) The assets and liabilities of the spouses;
>
> (3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
>
> (4) The liquidity of the property to be distributed;
>
> (5) The economic desirability of retaining intact an asset or an interest in an asset;
>
> (6) The tax consequences of the property division upon the respective awards to be made to each spouse;
>
> (7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
>
> (8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
>
> (9) Any retirement benefits of the spouses, excluding the social security benefits of a spouse except as may be relevant for purposes of dividing a public pension;
>
> (10) Any other factor that the court expressly finds to be relevant and equitable.

R.C. 3105.171(F).

{¶ 36} When ordering a division, disbursement or distributive award of property, the trial court shall "make written findings of fact that support the determination that the marital property has been equitably divided and shall specify the dates it used in determining the meaning of 'during the marriage.' "   R.C. 3105.171(G); *Hightower v. Hightower*, 10th Dist. No. 02AP-37, 2002-Ohio-5488, ¶ 23.  A trial court's failure to make written findings of fact supporting its division of property constitutes an abuse of discretion.  *Id.*  This court has held, however, that although a trial court is required to consider all factors expressed in R.C. 3105.171(F), it is not required to provide an exhaustive itemization of each factor, but, instead, clearly indicate that it considered the statutory factors. *Hadinger v. Hadinger*, 10th Dist. No. 15AP-09, 2016-Ohio-821, ¶ 21. The requirements of R.C. 3105.171(G) are satisfied when the reviewing court is able to ascertain the requisite information from various portions of the record, including the trial court's decision.  *Hamad* at ¶ 79.

{¶ 37} In support of her second assignment of error, appellant argues the trial court erred when it divided the parties' marital property unequally and failed to provide the statutorily required findings of fact as to the court's orders with regard to the following: (1) by ordering appellant to reimburse appellee $5,000 for the value of the Camaro transferred to the parties' daughter Tia, (2) by awarding appellee the totality of the parties' artwork without attributing the value of the property to the parties overall balance sheet, (3) by ordering the parties to split the equity in the marital residence while requiring appellant to be solely responsible for the payment of the note/mortgage from the date of the final hearing until the date of the sale, and (4) by ordering appellant to be solely responsible for the tax debts associated with CEK-Tipp Trucking from 2011-2014.  *See* R.C. 3105.171(C)(1) and (G).

{¶ 38} Appellant first asserts the trial court abused its discretion by ordering appellant to reimburse appellee $5,000 for the value of the Camaro transferred to Tia. Appellant argues the trial court erred when it found the Camaro was transferred pursuant to the 2015 POA and failed to provide written findings that would support the court's order regarding the Camaro as required by R.C. 3105.171(G).

{¶ 39} The trial court found appellee to be the owner of the Camaro and further that the Camaro was transferred to one of the parties' children pursuant to the invalid power of attorney, the 2015 POA. The trial court found that Tia testified she paid $9,000 for the remaining loan balance on the Camaro and further that the Camaro was worth $10,000. The court found that the Camaro was paid for with funds realized from the sale of the Florida property. The court then ordered appellant to pay $5,000 to appellee for the value of the Camaro.

{¶ 40} In support of her argument, appellant asserts the trial court's finding contradicts her testimony. Appellant points to her testimony wherein she consistently testified that she transferred the Camaro to Tia via the 2012 POA. Appellee points to no evidence in the record to support the trial court's finding that it was transferred per the 2015 POA.

{¶ 41} We agree with appellant that the record does not reflect that the Camaro was transferred pursuant to the 2015 POA. The record reflects, rather, it was transferred pursuant to the 2012 POA. We also agree with appellant that Tia did not testify that she paid the remainder of the loan on the Camaro, but rather appellant testified she believed Tia paid the remainder of the loan with her own savings.

{¶ 42} Other than the trial court's reference to the 2015 POA, the trial court did not provide findings that would support its determination regarding its order related to the transfer of the Camaro. *See* R.C. 3105.171(G). Furthermore, the record does not reveal competent, credible evidence to support the trial court's finding that the Camaro was transferred via the 2015 POA. As such, the trial court abused its discretion when it found the Camaro was transferred via the 2015 POA and by ordering appellant to pay $5,000 to appellee on these grounds.

{¶ 43} On remand, the trial court must consider the factual discrepancy as found herein when determining an equal, or equitable, division of the parties' marital property in accord with R.C. 3105.171.

{¶ 44} Appellant next contends the trial court abused its discretion by awarding appellee the totality of the parties' artwork without attributing the value of the property to the parties' overall division of property, thus creating an unequal division of property without the requisite findings.

{¶ 45} As to the parties' artwork, the trial court found that appellant testified she owned the fine art listed in her property affidavit and further that "these items were valued at $15,000.00."  (Decree at 3.)  In the court's division of property, the trial court awarded all of the artwork, 3 Peter Max paintings and 3 Christian Lassen paintings, to appellee, free and clear of any claim of appellant.   Appellee argues the art was gifted to him.

{¶ 46} We agree with appellee and note that the record reveals at several points appellant testified that appellee could have the artwork.  Therefore, we do not find the trial court abused its discretion as appellant claims with regard to the artwork.

{¶ 47} Appellant further argues the trial court abused its discretion by ordering the parties to equally divide the equity in the marital residence located on Hunting Creek Drive ("marital residence") upon sale of the property, while requiring appellant to be solely responsible for the payment of the note/mortgage from the date of the final hearing until the date of the sale.  Appellant avers that the court's order requiring only appellant to pay toward the debt associated with the marital residence after the termination of the parties' marriage results in appellant paying with her separate property and appellee realizing equity from appellant's sole payments.   Instead, appellant contends the equity in the marital residence should be calculated based on the existing debt as of the termination date of the parties' marriage, May 7, 2019.  Appellee argues there were eight people living at the marital residence, appellant does not live there and the children paid the house expenses.  He further argues he has no way to maintain payments on the house since he is imprisoned.

{¶ 48} The trial court found the parties' marital residence was marital property and subject to division.  The decree found Exhibit 13A reflected a value of $242,000 for the marital residence, however, the decree does not indicate that the court determined or adopted a value of the marital residence.

{¶ 49} Pertinent to the issues before us, the trial court ordered appellant to list the marital residence for sale within 30 days of the filing of the decree and further ordered that proceeds, or liabilities, of the sale shall be split equally between the parties.  The court also ordered appellant to maintain all mortgage payments, taxes, insurance or other indebtedness owed for the marital residence until the property was sold, including maintaining all upkeep of the marital residence.  Findings of fact to support the court's division of the parties' marital residence were not provided.

{¶ 50} This court has held that to comply with its duty under R.C. 3105.171(C)(1), the trial court must value marital property, and in most cases, the court's failure to do so amounts to an abuse of discretion. *Raymond v. Raymond*, 10th Dist. No. 11AP-363, 2011-Ohio-6173, ¶ 22, citing *Beagle v. Beagle*, 10th Dist. No. 07AP-494, 2008-Ohio-764, ¶ 41. Further, the trial court may not omit valuation altogether. *Id.* However, the failure to establish a specific value for an asset or liability does not amount to an abuse of discretion when the division of said asset or liability is not inequitable or prejudicial. *Hadinger* at ¶ 19, citing *Saks v. Riga*, 8th Dist. No. 101091, 2014-Ohio-4930, ¶ 21; *Rittinger v. Rittinger*, 10th Dist. No. 86AP-262 (Dec. 31, 1986).

{¶ 51} In allocating property between divorcing parties, a trial court must indicate the basis for its award in sufficient detail to enable an appellate court to determine whether the award is fair, equitable, and in accordance with the law. *Hood* at ¶ 20, citing *Kaechele v. Kaechele*, 35 Ohio St.3d 93, 97 (1988).

{¶ 52} Here, the trial court abused its discretion by failing to determine the value of the marital residence and failing to provide written findings to support its determination as to the division of the martial residence. Without sufficient findings, we cannot give meaningful review to the court's division of the marital residence in the first instance on appeal. *See Habtemariam v. Worku*, 10th Dist. No. 19AP-47, 2020-Ohio-3044, ¶ 58.

{¶ 53} On remand, the trial court must determine the value of the marital residence and then divide the marital property in accord with R.C. 3105.171(C)(1), and shall make written findings pursuant to R.C. 3105.171(G).

{¶ 54} Finally, appellant asserts the trial court abused its discretion by ordering appellant to be solely responsible for the tax debts associated with CEK-Tipp Trucking from 2011-2014. CEK-Tipp Trucking was a business registered in appellant's name.[6]

{¶ 55} The trial court found appellant owed a tax liability totaling $9,392 for the years 2011-2014 for CEK-Tipp Trucking. The court determined this debt was incurred during the marriage and was therefore marital; however, the court ordered appellant solely responsible for the debt. The court found that appellee should not be liable because

---

[6] The record reflects that in 1999 appellee began a freight company called "Always Dragon Freight," however, the trucks were in appellant's name under a business called "CEK-Tipp." (Tr. at 16-18, 20-21.) Appellant testified that she believed she was the sole shareholder of CEK-Tipp Trucking. The parties Rule 17 affidavits do not list the parties' businesses.

appellee was incarcerated in 2012 and consequently had no direct management of the business and no direct share in the proceeds.

{¶ 56} Appellant argues that the trial court's finding is not supported by the record as appellee was not incarcerated in 2012. In response to appellant's argument, appellee notes that he was ordered to pay tax liabilities for his business for tax years 2011 and 2012. Appellee further argues he was not present at trial and therefore could not disclose his tax liability for this period. Appellee argues that under the circumstances, the division of the tax liabilities is equitable.

{¶ 57} Appellee's arguments do not address the trial court's finding that appellee was incarcerated in 2012. We agree with appellant that the record reflects that appellee was incarcerated in July 2015, not in 2012, and there is no evidence to the contrary. Therefore, there is no competent, credible evidence that would support the trial court's basis for the division of the CEK-Tipp Trucking tax liabilities. As such, the trial court erred when it based its division of the CEK-Tipp Trucking tax liability on its finding that appellee was incarcerated in 2012.

{¶ 58} On remand, the trial court must consider the factual discrepancy as found herein when determining an equal, or equitable, division of the parties' marital property and provide written findings in support. R.C. 3105.171(C)(1) and (G).

{¶ 59} Accordingly, for the foregoing reasons, we sustain in part and overrule in part appellant's second assignment of error.

## IV. Conclusion

{¶ 60} We sustain in part and decline to address in part appellant's first assignment of error. We overrule in part and sustain in part appellant's second assignment of error. Therefore, we reverse in part the judgment of the Franklin County Court of Common Pleas, Division of Domestic Relations, and remand this case to that court for further proceedings consistent with law and this decision.

*Judgment affirmed in part;*
*reversed in part, and cause remanded.*

LUPER SCHUSTER and MENTEL, JJ., concur.

———————————